**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 3:23-cr-00076-BJD-SJH**

**ANA ROMERO**

      Defendant.

_____/


**DEFENDANT'S SENTENCING MEMORANDUM**


Ana Romero is a 43-year-old mother of three U.S. citizen children, including two minors for whom she is the sole caregiver. She came to the United States from Honduras in 2003 in search of safety and opportunity, and for over two decades she has lived a law-abiding life, working hard to support her family. This case represents her first and only contact with the criminal justice system.

Ms. Romero pled guilty to one count of conspiracy to commit wire fraud and to defraud the IRS. She has accepted full responsibility for her actions and cooperated with the government, which in turn has recommended a downward departure pursuant to U.S.S.G. § 5K1.1. As reflected in the final Presentence Report, her total offense level is 19, with a criminal history category of I, resulting in an advisory guideline range of 30–37 months.

In light of Ms. Romero's background, her substantial assistance, her role as a single mother and primary caregiver, her strong community support, and her sincere remorse, this memorandum respectfully urges the Court to exercise its discretion under 18 U.S.C. § 3553(a) and impose a sentence below the advisory range. Specifically, the defense requests a downward

variance to a sentence within Zone B of the Sentencing Table—such as home confinement or a split sentence—that would allow Ms. Romero to continue raising her children and rebuilding her life in the community.

## BACKGROUND

On May 17, 2023, Ana Romero was charged by information with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to defraud the United States by impeding the Internal Revenue Service, in violation of 18 U.S.C. § 371. These charges stemmed from Ms. Romero's limited administrative role in a larger financial scheme involving fraudulent tax return preparation.

On November 15, 2024, Ms. Romero appeared before this Court and entered a plea of guilty to both counts pursuant to a written plea agreement. The Court accepted the plea after conducting a thorough Rule 11 colloquy and confirming the factual basis for the charges. The plea agreement did not contain a binding sentence but preserved the government's discretion to seek a downward departure based on substantial assistance.

On July 1, 2025, the United States filed a motion under U.S.S.G. § 5K1.1 acknowledging Ms. Romero's cooperation and recommending a 3-level downward departure in her total offense level.

That same day, on July 1, 2025, the Probation Office disclosed the Final Presentence Investigation Report ("PSR"), which calculates a total offense level of 19 and a criminal history category of I, resulting in an advisory sentencing range of 30 to 37 months (Zone D).

Ms. Romero has remained on pretrial release throughout the pendency of the case without incident. She has complied fully with all conditions of supervision, demonstrated consistent remorse, and taken active steps toward rehabilitation and stability.

Sentencing is scheduled for Tuesday, July 8, 2025, before the Honorable Brian J. Davis at the United States Courthouse in Jacksonville, Florida.

## LEGAL FRAMEWORK

Federal sentencing is governed by 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines, which are now advisory following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

In determining an appropriate sentence, the Court must consider a range of factors, including:

1. the nature and circumstances of the offense,

2. the history and characteristics of the defendant,

3. the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law,

4. the need to provide just punishment and adequate deterrence,

5. the need to protect the public, and

6. the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition to those statutory factors, the Court is required to consider the advisory sentencing range calculated under the Guidelines, any applicable departure provisions, and any relevant policy statements of the Sentencing Commission. While the Guidelines range serves as a "starting point and the initial benchmark," the Court retains full discretion to impose a sentence above or below that range based on the individualized circumstances of the case. See Gall v. United States, 552 U.S. 38 (2007).

In this case, Ms. Romero's advisory guideline range is 30 to 37 months. However, the Court may vary downward from that range if it finds that the § 3553(a) factors warrant a sentence outside of the advisory range. A downward variance that places the sentence within Zone B of the Sentencing Table would permit consideration of alternative sentencing options such as home detention, probation, or a split sentence, all of which remain available to the Court in appropriate cases.

Federal sentencing law grants district courts wide discretion to tailor a sentence to the unique circumstances of each defendant. While the United States Sentencing Guidelines provide a recommended sentencing range, the Supreme Court has made clear that they are advisory only. See United States v. Booker, 543 U.S. 220 (2005). A sentencing court may impose a sentence above or below the guideline range, provided the final sentence is reasonable and supported by the statutory factors set forth in 18 U.S.C. § 3553(a).

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court emphasized that sentencing must be an "individualized assessment based on the facts presented." A sentencing court is not bound to apply a mechanical formula or impose a guidelines sentence if the broader context— including the defendant's background, personal history, and role in the offense—warrants a different result. The court may consider all relevant information in crafting a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.

This holistic framework allows the Court to evaluate not only the offense conduct and guideline calculations, but also the full picture of the defendant's life, including factors such as lack of criminal history, family obligations, cooperation with law enforcement, personal growth, and the impact of incarceration on dependent family members. As long as the Court

meaningfully considers the § 3553(a) factors and provides an explanation for its decision, a downward variance is entirely proper and within the Court's sound discretion.

Ms. Romero respectfully requests that the Court exercise its discretion to vary downward to an offense level of 11, which would place her within Zone B of the Sentencing Table, corresponding to an advisory guideline range of 8 to 14 months. A variance to Zone B would make her eligible for non-custodial sentencing options specifically contemplated by the Guidelines, including home detention, community confinement, or a split sentence involving a term of imprisonment followed by supervised release with conditions such as home confinement.

The Sentencing Commission has explicitly endorsed the use of alternative sentencing for first-time, non-violent offenders in Zone B. Under U.S.S.G. § 5C1.1(c), if the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by a sentence of probation that includes a condition or combination of conditions such as intermittent confinement, community confinement, or home detention. This structure provides a legally grounded framework for the Court to impose a just and sufficient sentence that meets the goals of § 3553(a) without subjecting Ms. Romero's family to the disruptive consequences of full incarceration.

The requested variance to Zone B does not ignore the seriousness of the offense, but rather aligns the sentence with Ms. Romero's unique personal circumstances, the goals of proportionality and deterrence, and the available sentencing alternatives recognized by both the Commission and this Court.


## ANALYSIS UNDER § 3553(a) FACTORS

I.    Nature and Circumstances of the Offense

The offense to which Ms. Romero pled guilty—conspiracy to commit wire fraud and to defraud the IRS—was a non-violent, financial offense arising from her involvement in a fraudulent tax return preparation scheme. There was no physical harm, threat of violence, or use of force involved in the conduct. The offense was carried out through administrative tasks and paperwork, and there is no allegation that Ms. Romero held a managerial or supervisory role in the conspiracy.

The scheme primarily involved the submission of false tax returns in order to obtain undeserved refunds. Ms. Romero's role was clerical and logistical in nature: she handled documents and data, rather than recruiting others, orchestrating the operation, or directing its proceeds. While the offense is undeniably serious and caused financial harm to the government, it does not fall within the category of violent or dangerous crimes that typically justify lengthy terms of incarceration to ensure public safety.

Moreover, the offense conduct took place over a defined period and has since ceased. Ms. Romero has fully accepted responsibility and entered a plea of guilty early in the process, demonstrating a willingness to cooperate with the government and accept the legal consequences of her actions.

In sum, the nature of the offense—while serious—was non-violent, non-aggravated, and not indicative of a continuing danger to the public. These features support the appropriateness of a sentence that emphasizes accountability without unnecessary incarceration.

II.    <u>Ana's role was limited and administrative</u>

Ms. Romero's participation in the offense was confined to a narrow and subordinate role. She did not design or orchestrate the broader fraudulent scheme, nor did she supervise others or control the proceeds of the fraud. Rather, her involvement was limited to basic administrative assistance, such as handling paperwork, gathering documentation, and relaying information for

6

the individuals operating the scheme. These tasks, while contributing to the functioning of the conspiracy, reflect a significantly lower degree of culpability than that of the organizers, recruiters, or primary beneficiaries.

The Presentence Report supports this characterization, noting that Ms. Romero did not personally receive a substantial financial benefit and was not entrusted with managerial authority. There is no evidence that she directed others, devised the fraudulent tax returns, or exercised decision-making power within the operation. Her contribution was reactive and clerical, not proactive or strategic.

The Sentencing Guidelines themselves recognize that a defendant's role in the offense is an important mitigating factor. In Ms. Romero's case, her limited and subordinate participation should weigh in favor of a more lenient sentence, especially when considered alongside her acceptance of responsibility and early cooperation.

Taken together, the facts demonstrate that while Ms. Romero was legally accountable for her conduct, her role was significantly less blameworthy than others involved in the conspiracy. A sentence that reflects her limited, administrative participation would be both just and proportional.

III.    <u>No physical harm or leadership role</u>

Ms. Romero's offense did not involve any act of violence, threat of force, or risk to personal safety. The conduct at issue was purely financial in nature and executed through paperwork and electronic filings—not through coercion, intimidation, or physical danger to others. At no point was any individual placed in harm's way as a result of Ms. Romero's actions. This distinguishes her case from crimes that present a direct or ongoing threat to public safety,

which typically warrant more severe punishment to serve the goals of deterrence and incapacitation.

In addition, the evidence in the record makes clear that Ms. Romero did not occupy a leadership, management, or supervisory role within the conspiracy. She was not a decision-maker, recruiter, or organizer. Her responsibilities did not include overseeing others, setting strategy, or coordinating the broader scheme. The Presentence Investigation Report contains no enhancement for aggravating role under U.S.S.G. § 3B1.1, and the government has not alleged otherwise.

The absence of aggravating conduct—such as directing others, engaging in obstruction, or using a position of authority to exploit the system—further supports that Ms. Romero's culpability falls on the lower end of the spectrum contemplated by the offense. Her limited and non-leadership involvement, coupled with the absence of any physical harm or threat to the public, weighs in favor of a sentence that reflects the actual scope of her conduct without exceeding what is necessary to promote accountability.

IV.    <u>Did not personally profit significantly</u>

While Ms. Romero participated in the underlying offense, the available record confirms that she did not personally profit in any substantial way from the conspiracy. She was not a primary beneficiary of the fraudulent tax refund scheme, nor did she receive proceeds commensurate with those who orchestrated or directed the operation. Her compensation, if any, appears to have been minimal and more akin to routine administrative assistance rather than a share of the unlawful gains.

There is no indication that Ms. Romero enriched herself at the government's expense, exploited others for financial gain, or used the scheme to support a lavish lifestyle. In fact, the Presentence Investigation Report contains no asset disclosures reflecting substantial earnings,

and the government has not argued otherwise. This lack of personal enrichment stands in contrast to many financial crimes where defendants intentionally orchestrate complex schemes for significant self-gain.

The limited financial benefit Ms. Romero may have received further reinforces the conclusion that her conduct, while criminal, was not motivated by greed or long-term financial planning, but rather occurred in the context of a broader operation in which she played a subordinate role. When sentencing courts assess culpability, the degree of personal profit is an important factor—particularly in distinguishing between major planners and low-level participants.

In sum, Ms. Romero's minimal financial gain underscores her lower culpability and supports a sentence that reflects her actual level of involvement, rather than one that assumes parity with higher-level co-conspirators who may have reaped substantial profits.

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Ana Romero is a 43-year-old Honduran immigrant who has lived in the United States since 2003. Over the past two decades, she has built a quiet and stable life rooted in hard work, family responsibility, and devotion to her children and grandchildren. She has no criminal record of any kind—no prior arrests, convictions, or supervision violations—placing her squarely within Criminal History Category I. This case represents the first and only time she has encountered the criminal justice system, a fact that underscores her history of law-abiding conduct.

Ms. Romero's identity is defined not by this mistake, but by her steadfast role as a devoted mother and grandmother. She is the sole caregiver for her two youngest children, ages 11 and 14, both of whom are U.S. citizens. She also provides full-time care for her 4-year-old

grandson while her adult daughter, Ana Luisa Zelaya Romero, attends nursing school. Without Ms. Romero's caregiving, both her grandson's development and her daughter's career trajectory would be seriously compromised.

This caregiving role is not symbolic—it is structural. Ms. Romero anchors a three-generation household, providing emotional stability, daily logistical support, and essential financial management. Exhibit A, a letter from her cousin Arllinda Romero, describes how Ana holds the family together through kindness, guidance, and unconditional support. As Arllinda notes, Ana's absence would "tear the heart out of our home."

The same themes echo throughout her community. Exhibit B, submitted by Danis López, a close family friend, describes Ana as a person of "profound humility, deep faith, and constant generosity." Mr. López explains that Ana is the kind of person who, despite limited means, has always been willing to help others—watching neighbors' children, offering rides to school, and providing meals when someone was in need.

Exhibit C, from Stefania Cruz, further highlights Ana's character as a hardworking and morally grounded individual. Ms. Cruz recounts how Ana quietly took care of her children while working long hours and always maintained a dignified and respectful demeanor. She writes that Ana "never complained, never blamed others—just focused on doing the right thing."

Ms. Romero's journey during this case has also been marked by personal hardship. While on pretrial release, she suffered a miscarriage, a devastating event that she bore with quiet strength. Despite this loss, she continued to meet every obligation of supervision without incident or complaint. This period has been one of deep reflection and accountability for her, reinforcing her commitment to growth and responsibility.

Ana Romero is not a recidivist. She poses no threat to the public. She is a caregiver, a community member, and a woman of evident moral grounding. The totality of her personal history—corroborated by compelling letters from family and community members—supports the imposition of a non-custodial sentence. Her background and character are exactly the kind of mitigating factors that § 3553(a) entrusts the Court to weigh when determining whether incarceration is necessary or appropriate. In Ana Romero's case, it is not.

## <u>NEED FOR THE SENTENCE IMPOSED</u>

The primary purposes of sentencing under 18 U.S.C. § 3553(a)(2)—to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public—must be balanced against the principle that the sentence imposed be "sufficient, but not greater than necessary" to achieve those aims. In the case of Ana Romero, a custodial sentence would inflict substantial and unnecessary harm on innocent third parties—most notably, her two minor children and her young grandson—without materially advancing any of the statutory goals of sentencing.

I.     <u>A custodial sentence would separate a mother from dependent children.</u>

Ms. Romero is the sole caregiver and emotional anchor for her two youngest children, ages 11 and 14. These children are U.S. citizens who have grown up entirely under their mother's care and depend on her for daily meals, transportation, school supervision, and emotional guidance. Removing Ms. Romero from the home would have an immediate and destabilizing effect on their upbringing. There is no available family member equipped to assume full-time caregiving in her absence, and the risk of placement in a disrupted or inadequate environment would be high. For children on the cusp of adolescence, this disruption could have lifelong developmental consequences. Courts have recognized that such family hardship can justify a below-guideline sentence. See United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997)

(affirming a non-incarcerative sentence where defendant's imprisonment would have "dire effects on the well-being of his children").

Courts have also repeatedly affirmed the appropriateness of non-custodial or minimally custodial sentences for similarly situated defendants. The Middle District of Florida and other districts have endorsed such discretion where the defendant has demonstrated acceptance of responsibility, poses no risk to the community, and bears extraordinary family responsibilities. In United States v. Baker, 445 F.3d 987, 992–93 (7th Cir. 2006), the court upheld a below-guideline sentence for a defendant whose incarceration would have imposed undue hardship on his children, emphasizing that family circumstances may warrant a variance when supported by the totality of the § 3553(a) factors.

The Middle District of Florida has also recognized that factors like low criminal history, cooperation with the government, non-violent conduct, and strong family/community support can justify a below-guideline sentence. See United States v. Daley, 484 F. Supp. 3d 1171 (M.D. Fla. 2020) (granting time served based on a holistic assessment of mitigating factors, including substantial assistance and caregiver status). While Daley involved compassionate release under § 3582(c), the court's reasoning supports similar leniency under § 3553(a).

II.     <u>Incarceration would harm her grandson's stability and jeopardize her daughter's education.</u>

Ms. Romero also serves as the full-time caregiver for her 4-year-old grandson while her adult daughter, Ana Luisa, attends nursing school. Without Ana's availability to provide this support, her daughter would face the untenable choice of abandoning her education or scrambling for expensive, unreliable childcare. This is not merely a matter of convenience—it is a critical structural role that makes higher education possible for a working-class, single mother. A custodial sentence would therefore jeopardize two generations of advancement: the

educational future of Ana Luisa and the day-to-day security of the grandson who depends on Ana Romero for continuity and care.

III.  <u>A prison term would disrupt a multi-generational household built on fragile stability.</u>

The Romero household is a three-generation family unit sustained by Ana's consistent presence. She manages the emotional needs, household logistics, and financial planning for the entire family. The loss of her leadership—even temporarily—would disrupt the fragile balance that keeps this family stable. Unlike larger extended families where others may step in, Ana's household is not redundant; she is its irreplaceable center. Removing her would likely force the family to rely on government assistance or risk losing housing, stability, and momentum toward independence and generational progress.

IV.  <u>Ana poses no threat to the public.</u>

Ana Romero is not a violent offender, nor does she pose a risk of future harm to the public. The offense to which she pled guilty was a financial conspiracy executed in an administrative capacity. There is no indication that she presents any danger to others, has any propensity for recidivism, or requires incapacitation to protect society. She has complied fully with every term of her pretrial release for over a year, without a single violation or concern raised by the supervising agency. Her behavior demonstrates not only compliance, but a deep and sincere commitment to rehabilitation.

V.  <u>Rehabilitation—not incarceration—will best serve the interests of justice.</u>

Ms. Romero has already taken significant steps toward accountability and change. She pled guilty early in the process, accepted full responsibility for her conduct, and cooperated with the government. She has also endured profound personal hardship, including the loss of a pregnancy during the pendency of this case, and emerged from that period with humility and a

renewed sense of purpose. Nothing about her profile suggests that incarceration is necessary to deter future misconduct or reinforce respect for the law. In fact, a sentence that permits her to remain in the community under strict supervision, such as home confinement or a split sentence, would serve the dual goals of punishment and rehabilitation far more effectively.

Justice is not served by incarcerating a low-risk, remorseful, non-violent mother when alternative sanctions can achieve deterrence, accountability, and structure without destroying a family. Ana Romero's circumstances exemplify the kind of case in which § 3553(a) explicitly contemplates judicial discretion to prevent a punitive result that exceeds what is necessary. The Court has the tools to fashion a sentence that honors the seriousness of the offense while preserving a home, a family, and a path forward.

## **SENTENCING REQUEST**

In light of the advisory nature of the Guidelines, the mitigating factors presented under 18 U.S.C. § 3553(a), and the government's acknowledgment of Ms. Romero's substantial assistance through its § 5K1.1 motion, the defense respectfully requests that this Court impose a non-custodial or minimally custodial sentence consistent with Zone B of the Sentencing Table. Ms. Romero's adjusted offense level begins at 19. With a 3-level reduction recommended by the government under U.S.S.G. § 5K1.1, her total offense level is reduced to 16. The defense now respectfully requests a 5-level downward variance under § 3553(a), based on Ms. Romero's extraordinary family responsibilities, lack of criminal history, limited role in a non-violent offense, and demonstrated rehabilitation. This would result in a total offense level of 11, placing her within Zone B and permitting the Court to consider non-custodial sentencing alternatives such as probation with home confinement or a split sentence.

I.    <u>Primary Request: Non-Custodial Sentence of Probation with Home Confinement</u>

Ms. Romero's circumstances present a compelling case for a sentence of probation with a condition of home confinement. Such a sentence would allow her to remain in the community under strict supervision, where she can continue fulfilling her essential caregiving responsibilities to her children and grandson, while still serving a meaningful sanction for her conduct.

This sentencing structure would reflect:

1. the seriousness of the offense,

2. the importance of promoting respect for the law,

3. the need for just punishment,

4. and the reality that Ms. Romero poses no danger to the public and has shown genuine remorse and rehabilitation.

It would also avoid unnecessary disruption to the fragile ecosystem of her multigenerational household—a consequence that would fall most heavily on innocent minors.

II.     Alternative Request: Split Sentence Under Zone B

In the alternative, the Court may impose a split sentence under U.S.S.G. § 5C1.1(d)(2). For example, a sentence of: 6 months in the custody of the Bureau of Prisons, followed by 6 months of home confinement or community confinement would provide for a term of incarceration that satisfies the statutory goals of accountability and deterrence, while significantly mitigating the collateral harm to Ms. Romero's dependents and allowing her to resume her parenting role within a reasonable time.

A split sentence under Zone B would also reflect Ms. Romero's limited culpability, early plea, lack of criminal history, and substantial assistance—while maintaining the integrity of the sentencing process.

III.    <u>Recommended Conditions and Requests to the Court</u>

Regardless of whether the Court imposes probation, a split sentence, or a short custodial term, the defense respectfully requests the following:

A.    Recommendation for Placement Near Orlando, Florida

Ms. Romero resides in Orlando, Florida, and her entire family—including the minor children and her grandson—depends on her presence. If the Court imposes any custodial sentence, we respectfully request that the Court recommend placement at a facility as close to Orlando as possible, to facilitate family visitation and continuity of care.

B.    Participation in Reentry Programming

Ms. Romero is committed to rehabilitation and would benefit from programming that facilitates reentry into the community. The defense asks that the Court recommend that she be given priority access to the Bureau of Prisons' Residential Reentry Center (RRC) placement or other structured reentry programs, including work-release and parenting education, which align with her desire to become an even stronger resource for her family and community.

C.    Credit for Time Served on Pretrial Supervision

Since being released on bond, Ms. Romero has fully complied with all terms of supervision without any violations. Her conduct reflects her remorse and rehabilitation. We respectfully request that the Court consider granting credit for the 19+ months of successful pretrial supervision as a factor in support of a sentence that includes time served or home confinement in lieu of further incarceration.

In conclusion, the requested sentence of probation with home confinement—or, alternatively, a split sentence—would fulfill all of the objectives of federal sentencing under § 3553(a), while honoring the unique human circumstances of Ana Romero's life. It would protect her children, uphold the law, and provide a meaningful opportunity for justice rooted in compassion and proportionality.

Respectfully Submitted By:

*/s/ Luis A. Morales*
Luis A. Morales, Esq.
Florida Bar No. 1054662
Luis Morales Legal, PLLC
122 W Pine St Suite 300
Orlando, FL 32801
Telephone: (321) 324-5454
Email: luis@luismoraleslegal.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on July 2, 2025, I filed the foregoing document with the

Clerk of Court via the CM/ECF system, which will send a true and accurate copy

thereof via email to all counsel of record.

*/s/Luis A. Morales*
Luis A. Morales, Esq.

Exhibit A

**Arlinda Misaela Romero**
Tampa, Florida

Junio 30, 2025

**Honorable Juez Brian J. Davis**
United States District Judge
Middle District of Florida
300 North Hogan Street
Jacksonville, FL 32202

**RE: Carta de Referencia a Favor de Ana Romero**
**Caso No. 3:23-cr-76-BJD-SJH**

Honorable Juez Davis:

Mi nombre es Arlinda Misaela Romero y soy prima hermana de Ana Romero. Le escribo con el mayor respeto para expresar mi apoyo personal a favor de Ana mientras usted considera su sentencia en este caso.

He conocido a Ana toda mi vida. Nos criamos muy cerca, como hermanas, y siempre la he visto como una persona noble, generosa y profundamente dedicada a su familia. Ella es madre de tres hijos, incluyendo dos menores de edad, y siempre ha hecho todo lo posible por estar presente en sus vidas, aún en medio de situaciones difíciles. A pesar de los errores que la han traído a este punto, sé que ella siente un profundo arrepentimiento y está comprometida a cambiar el rumbo de su vida.

Después de crecer juntas en Honduras, me vine a vivir a Boston. Lamentablemente, la situación con mi madre fue muy difícil; me rechazó y me sacó de la casa, dejándome sola en un país desconocido. En ese momento tan doloroso, Ana ya vivía en Boston y fue la única persona que me extendió la mano. Me brindó apoyo emocional, me ayudó a estabilizarme y me hizo sentir que no estaba sola. Ana actuó como familia cuando más lo necesitaba. Más adelante, cuando ella decidió mudarse a Florida, yo también lo hice, y volvimos a vivir juntas por dos años.

Durante los dos años que vivimos juntas en Florida, pude ver de cerca el esfuerzo diario que Ana hacía como madre soltera. En ese tiempo, yo ayudaba a cuidar a su hijo menor para que ella pudiera salir a trabajar. Ana hacía todo lo posible por mantener a sus hijos, sin descanso y sin quejarse. Nunca vi que se rindiera, a pesar de todas las dificultades económicas y personales que enfrentaba. Lo que más me marcó fue ver su dedicación como madre — siempre presente, siempre luchando por darles una vida mejor a sus hijos. Fue un ejemplo para mí.

RE: Carta de Referencia a Favor de Ana Romero
Caso No. 3:23-cr-76-BJD-SJH

Yo sé que Ana cometió un error, y ella también lo sabe. Pero puedo asegurarle, con todo mi corazón, que no es una persona mala ni peligrosa. Ana siempre ha sido alguien humilde, trabajadora y con un gran sentido de responsabilidad hacia su familia. Está verdaderamente arrepentida por lo que hizo y ha aprendido una lección muy dura.

Le pido, con el mayor respeto, que considere no solo el delito, sino también su historia, su rol como madre, y el impacto que tendría su ausencia en sus hijos. Ana no está sola. Tiene familia que la apoya, que cree en ella, y que está dispuesta a caminar con ella en este proceso de rehacer su vida.

Agradezco sinceramente que se haya tomado el tiempo de leer mi carta. Si el tribunal necesita más información de mi parte, con gusto estoy dispuesta a colaborar.


Respetuosamente,

Arlinda Misaela Romero

**Arlinda Misaela Romero**
Tampa, Florida

June 30, 2025

**Honorable Judge Brian J. Davis**
United States District Judge

Middle District of Florida

300 North Hogan Street

Jacksonville, FL 32202


**RE: Letter of Reference in Favor of Ana Romero**
**Caso No. 3:23-cr-76-BJD-SJH**

Honorable Judge Davis:

My name is Arlinda Misaela Romero, and I am the first cousin of Ana Romero. I write to you with the utmost respect to express my personal support for Ana as you consider her sentencing in this case.

I have known Ana my entire life. We were raised very close, like sisters, and I have always seen her as a noble, generous person who is deeply devoted to her family. She is the mother of three children, including two minors, and she has always done everything possible to be present in their lives, even in the midst of difficult situations. Despite the mistakes that have brought her to this point, I know she feels deep remorse and is committed to changing the course of her life.

After growing up together in Honduras, I came to live in Boston. Unfortunately, my situation with my mother was very difficult; she rejected me and kicked me out of the house, leaving me alone in an unfamiliar country. In that painful moment, Ana was already living in Boston and was the only person who reached out to me. She gave me emotional support, helped me stabilize, and made me feel that I was not alone. Ana acted like family when I needed it most. Later, when she decided to move to Florida, I moved as well, and we lived together again for two years.

During the two years we lived together in Florida, I was able to witness firsthand the daily effort Ana made as a single mother. At that time, I helped take care of her

youngest child so she could go to work. Ana did everything she could to support her children, without rest and without complaints. I never saw her give up, despite all the financial and personal hardships she faced. What impacted me most was seeing her dedication as a mother — always present, always fighting to give her children a better life. She was an example to me.

RE: Letter of Reference in Favor of Ana Romero
Caso No. 3:23-cr-76-BJD-SJH

I know that Ana made a mistake, and she knows it too. But I can assure you, with all my heart, that she is not a bad or dangerous person. Ana has always been a humble, hardworking woman with a deep sense of responsibility toward her family. She is truly remorseful for what she did and has learned a very hard lesson.

I respectfully ask that you consider not only the offense, but also her story, her role as a mother, and the impact her absence would have on her children. Ana is not alone. She has family who support her, who believe in her, and who are willing to walk alongside her in this process of rebuilding her life.

I sincerely appreciate you taking the time to read my letter. If the court needs more information from me, I am gladly willing to cooperate.

Respectfully,

[*Signed*]
Arlinda Misaela Romero

## CERTIFICATION OF TRANSLATION ACCURACY

I, Yoselin Andrea Garavito, certify that I am fluent in both English and Spanish, and that I am competent to translate from Spanish to English. I further certify that the above document is a true, complete, and accurate translation of the original document written in Spanish, which appears to be a letter of support for Ana Romero from Arlinda Misaela Romero.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and ability.

Translator's Information:

- **Full Name:** Yoselin Andrea Garavito
- **Date of Birth:** January 5, 1981
- **Residence:** Davenport, Florida
- **Native Country:** Venezuela
- **Phone Number:** 305-783-1481

**Signature:** _Yoselin Garavito_

**Date:**        July 2, 2025

Exhibit B

Danis López
Boston, Massachusets

Junio 30, 2025

**Honorable Juez Brian J. Davis**
United States District Judge
Middle District of Florida
300 North Hogan Street
Jacksonville, FL 32202

**RE: Carta de Referencia a Favor de Ana Romero**
**Caso No. 3:23-cr-76-BJD-SJH**

Honorable Juez Davis:

Mi nombre es Danis López y escribo esta carta con respeto y sinceridad en apoyo a Ana Romero. Conozco a Ana desde hace más de veinte años, desde nuestros tiempos en Honduras. Nuestra relación es cercana: soy la esposa de su ex-cuñado, Santiago Zelaya.

Tuvimos la oportunidad de convivir de manera directa durante aproximadamente dos años en la ciudad de Boston, cuando vivimos juntas bajo el mismo techo. Esa etapa me permitió conocer a Ana no solo como familiar, sino como persona y como madre. Vivir juntas me dio una perspectiva muy clara de su carácter, su manera de ser y su compromiso con su familia.

Ana no solo se comportaba con respeto y calidez, sino que también me apoyaba en momentos en que yo necesitaba ayuda. Recuerdo con gratitud que en muchas ocasiones ella cuidó de mis hijos para que yo pudiera salir a trabajar. Lo hacía con cariño, como si fueran suyos. Verla interactuar con sus propios hijos y con los míos me mostró que es una mujer protectora, comprometida con su familia, y con un gran corazón.

Esa convivencia diaria me permitió verla en sus momentos buenos y en los difíciles, y siempre mostró ser una persona responsable, dedicada, y dispuesta a ayudar sin esperar nada a cambio.

Algo que siempre me llamó la atención de Ana fue su capacidad para mantener la calma y enfrentar las dificultades sin rendirse. A pesar de las limitaciones económicas o los retos personales que enfrentaba como madre soltera, nunca la vi perder la esperanza ni rendirse ante la presión. Era organizada, limpia, y cuidaba a sus hijos con mucha dedicación, aun cuando le tocaba salir muy temprano o regresar tarde del trabajo.

RE: Carta de Referencia a Favor de Ana Romero
Caso No. 3:23-cr-76-BJD-SJH

No era una persona que buscara conflictos ni que hablara mal de los demás. Al contrario, trataba a quienes la rodeaban con respeto y buscaba la forma de resolver los problemas con sensatez. Nunca vi en ella actitudes de violencia ni irresponsabilidad. Ana siempre ha sido una mujer que da ejemplo con su comportamiento diario, sin necesidad de grandes palabras.

Sé que Ana está enfrentando una situación muy difícil por los errores que cometió, y también sé que está verdaderamente arrepentida. He podido hablar con ella y sentir en sus palabras el peso emocional que esto le ha causado, no solo por las consecuencias legales, sino por el dolor de saber que ha fallado a sus hijos y a sí misma.

Pero también veo en ella un deseo genuino de corregir el rumbo. Está enfocada en asumir su responsabilidad y en encontrar una forma de salir adelante, no por orgullo, sino por sus hijos, quienes siguen dependiendo de ella emocional y económicamente.

Nadie está justificando lo que hizo, y Ana tampoco lo ha intentado. Pero quienes la conocemos sabemos que esta situación no define quién es ella en esencia. Ana necesita una oportunidad para demostrar que puede recuperarse, aprender de esto, y continuar siendo el pilar de su familia.

Por todo lo que he compartido, le ruego respetuosamente que tome en cuenta no solo el error que cometió Ana, sino también su historia, su carácter y el impacto humano que tendría una sentencia severa, especialmente en la vida de sus hijos. Ana es una madre que ha luchado sola por años, y ahora más que nunca necesita estar cerca de ellos para poder reparar el daño y reconstruir su camino.

Le pido humildemente que considere una oportunidad para que ella pueda seguir presente en la vida de su familia y demostrar que este no será el final de su historia.

Gracias por tomarse el tiempo de leer esta carta. Quedo a la disposición del tribunal si necesita más información o desea que aclare cualquier aspecto de lo que he expresado.


Respetuosamente,

Danis López

**Danis López**
Boston, Massachusets

June 30, 2025

**Honorable Judge Brian J. Davis**
United States District Judge

Middle District of Florida

300 North Hogan Street

Jacksonville, FL 32202


**RE: Letter of Reference in Favor of Ana Romero**
**Caso No. 3:23-cr-76-BJD-SJH**

Honorable Judge Davis:

My name is Danis López, and I write this letter with respect and sincerity in support of Ana Romero. I have known Ana for more than twenty years, since our time in Honduras. Our relationship is close: I am the wife of her ex-brother-in-law, Santiago Zelaya.

We had the opportunity to live together directly for approximately two years in the city of Boston, when we lived under the same roof. That period allowed me to get to know Ana not only as a relative, but also as a person and as a mother. Living together gave me a very clear perspective on her character, her personality, and her commitment to her family.

Ana not only treated me with respect and warmth, but also supported me in times when I needed help. I remember with gratitude that on many occasions she took care of my children so I could go to work. She did it with love, as if they were her own. Watching her interact with her own children and with mine showed me that she is a protective woman, committed to her family, and with a big heart.

That daily interaction allowed me to see her both in good times and in difficult ones, and she always showed herself to be a responsible, dedicated person, willing to help without expecting anything in return.

Something that always stood out to me about Ana was her ability to stay calm and face hardships without giving up. Despite the financial limitations or personal challenges she faced as a single mother, I never saw her lose hope or give in to pressure. She was organized, clean, and cared for her children with great dedication, even when she had to leave very early or return late from work.

RE: Letter of Reference in Favor of Ana Romero
Caso No. 3:23-cr-76-BJD-SJH

She was not someone who sought out conflict or spoke badly of others. On the contrary, she treated those around her with respect and looked for sensible ways to resolve problems. I never saw any signs of violence or irresponsibility in her. Ana has always been a woman who leads by example through her daily behavior, without needing to say much.

I know that Ana is facing a very difficult situation because of the mistakes she made, and I also know that she is truly remorseful. I have spoken with her and could feel in her words the emotional weight this has caused—not only because of the legal consequences, but also because of the pain of knowing she has let down her children and herself.

But I also see in her a genuine desire to change course. She is focused on taking responsibility and finding a way to move forward—not out of pride, but for her children, who still depend on her emotionally and financially.

No one is justifying what she did, and Ana hasn't tried to either. But those of us who know her understand that this situation does not define who she is at her core. Ana needs an opportunity to show that she can recover, learn from this, and continue being the pillar of her family.

For all the reasons I've shared, I respectfully ask that you take into account not only the mistake Ana made, but also her story, her character, and the human impact that a harsh sentence would have—especially on the lives of her children. Ana is a mother who has fought alone for years, and now more than ever she needs to be close to them to repair the harm and rebuild her path.

I humbly ask that you consider giving her the opportunity to remain present in the lives of her family and to prove that this will not be the end of her story.

Thank you for taking the time to read this letter. I remain at the court's disposal should you need more information or wish for me to clarify anything I have shared.

Respectfully,

[*Signed*]

Danis Lopez

## CERTIFICATION OF TRANSLATION ACCURACY

I, Yoselin Andrea Garavito, certify that I am fluent in both English and Spanish, and that I am competent to translate from Spanish to English. I further certify that the above document is a true, complete, and accurate translation of the original document written in Spanish, which appears to be a letter of support for Ana Romero from Danis Lopez.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and ability.

Translator's Information:

- **Full Name:** Yoselin Andrea Garavito
- **Date of Birth:** January 5, 1981
- **Residence:** Davenport, Florida
- **Native Country:** Venezuela
- **Phone Number:** 305-783-1481

**Signature:** _Yoselin Garavito_

**Date:**        July 2, 2025

Exhibit C

**A quien corresponda:**

Mi nombre es **Stefani Cruz** y por medio de esta carta quiero expresar mi total apoyo a mi querida amiga de la familia, **Anayansi Romero**, quien actualmente está solicitando poder permanecer en los Estados Unidos.

Conozco a Ana desde que era pequeña y, con el tiempo, se ha convertido en parte de mi familia. Es una mujer trabajadora, humilde y llena de bondad. Ha demostrado una increíble fortaleza al luchar por una vida mejor para ella y sus hijos. Ana ha echado raíces aquí y ha hecho de este país su verdadero hogar.

Ana es una madre amorosa cuyos hijos nacieron y han crecido aquí, en los Estados Unidos. Sus hijos son ciudadanos estadounidenses y toda su vida está aquí: su escuela, sus amistades, su salud, su estabilidad emocional y su futuro. Ana es el principal sostén de sus hijos y separarla de ellos sería devastador. Ellos necesitan crecer con su madre a su lado, y Ana merece poder criarlos en un lugar seguro, estable y lleno de oportunidades.

Además de ser una madre dedicada, Ana es una persona valiosa y respetada en nuestra comunidad. Es una mujer que siempre está dispuesta a ayudar a los demás, que trabaja con honestidad y que aporta con su presencia y su esfuerzo. No representa una carga para este país, al contrario, es una bendición para todos los que la rodeamos.

Sería verdaderamente doloroso e injusto obligar a Ana a abandonar la vida que ha construido aquí. Es una mujer de valores, fuerza y compasión, y estoy convencida de que merece tener la oportunidad de permanecer en los Estados Unidos junto a su familia, en el lugar donde realmente pertenece.

Por favor, les pido que consideren su historia, su papel como madre y todo lo que ha contribuido a esta comunidad. Les ruego que muestren compasión y comprensión al evaluar su caso.

Atentamente,

**Stefani Cruz**
407-360-1210
Relación con Ana: Amiga de la familia

To Whom It May Concern:

My name is Stefani Cruz, and through this letter, I want to express my full support for my dear family friend, Anayansi Romero, who is currently seeking to remain in the United States.

I have known Ana since she was a child, and over time, she has become part of my family. She is a hardworking, humble woman full of kindness. She has shown incredible strength in fighting for a better life for herself and her children. Ana has put down roots here and has made this country her true home.

Ana is a loving mother whose children were born and have grown up here in the United States. Her children are U.S. citizens, and her entire life is here: their school, their friendships, their health, their emotional stability, and their future. Ana is the primary provider for her children, and separating her from them would be devastating. They need to grow up with their mother by their side, and Ana deserves to raise them in a safe, stable place full of opportunity.

In addition to being a devoted mother, Ana is a valuable and respected person in our community. She is a woman who is always willing to help others, who works with honesty, and who contributes with her presence and effort. She is not a burden to this country—on the contrary, she is a blessing to all of us who know her.

It would be truly painful and unjust to force Ana to leave the life she has built here. She is a woman of values, strength, and compassion, and I am convinced that she deserves the opportunity to remain in the United States with her family, in the place where she truly belongs.

Please, I ask you to consider her story, her role as a mother, and all that she has contributed to this community. I urge you to show compassion and understanding when evaluating her case.

Sincerely,
[*Signature*]
Stefani Cruz

## CERTIFICATION OF TRANSLATION ACCURACY

I, Yoselin Andrea Garavito, certify that I am fluent in both English and Spanish, and that I am competent to translate from Spanish to English. I further certify that the above document is a true, complete, and accurate translation of the original document written in Spanish, which appears to be a letter of support for Anayansi Romero from Stefani Cruz.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and ability.

Translator's Information:

- **Full Name:** Yoselin Andrea Garavito
- **Date of Birth:** January 5, 1981
- **Residence:** Davenport, Florida
- **Native Country:** Venezuela
- **Phone Number:** 305-783-1481

**Signature:** _Yoselin Garavito_

**Date:**        July 2, 2025